IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VIGCE LLC d/b/a VISION GROUP CLEANING, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-94-BN |
| LEVEL ELEVEN LLC | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT**

The parties have filed cross-motions for summary judgment. *See* Dkt. No. 39 (Plaintiff's Motion for Summary Judgment); Dkt. No. 49 (Defendant's Amended Motion for Summary Judgment).

Plaintiff VIGCE LLC d/b/a Vision Group Cleaning has also filed objections to Defendant Level Eleven LLC's summary judgment evidence, Defendant's motion for summary judgment, and Defendant's response to Plaintiff's motion for summary judgment. *See* Dkt. Nos. 53, 56.

For the reasons explained below, the Court grants Plaintiff's motion for summary judgment [Dkt. No. 39] and denies Defendant's motion for summary judgment [Dkt. No. 49].

## Background

This case concerns contracts to provide commercial janitorial services.

Defendant Level Eleven LLC contracted with property owners to provide

commercial janitorial cleaning services to facilities located at Redbird Mall in Dallas, Texas. Level Eleven then subcontracted with Plaintiff Vision Group Cleaning to provide cleaning services to specific properties.

Vision Group and Level Eleven were parties to the following contracts:

- Chime Dallas Contract (Dkt. No. 41-1 at 11-21);

- Redbird Mall Contract (*Id*. at 23-34);

- Workforce Solutions Contract (*Id*. at 36-46);

- Family Place Contract (*Id*. at 48-49);

- UTSW Contract (*Id*. at 51-59); and

- Westmoreland Contract (*Id*. at 61-62).

All of the contracts had the same length-of-term language:

This janitorial service contract is to be for three (3) years from the date of acceptance and shall automatically renew for an additional one (1) year period on the last anniversary date of this agreement.

But they had different cancellation clauses.

The Workforce, Family Place and Westmoreland contracts included the following term after the length-of-term language:

At this point either party may cancel with thirty (30) days written notice to the other party.

*Id*. at 41-1 at 36, 42 (Workforce); 48 (Family Place); 61 (Westmoreland) (collectively, the "Automatic Renewal Contracts").

The Chime and UTSW contracts provided for early termination:

This contract may be terminated in whole or in part by either party in the event of substantial failure by the other party to fulfill its

> obligations under this contract through no fault of the terminating party provided that no such termination may be implemented unless and until the other party is given at (30) thirty days written notice (delivered by certified mail, return receipt requested) of intent to terminate, and (2) an opportunity for consultation with the terminating party followed by reasonable opportunity, of not more than (10) ten working days, to rectify the defects and products or performance, prior to termination.

*Id*. at 41-1 at 15 (Chime Contract) and 55 (UTSW Contract) (collectively, the "Substantial Failure Contracts").

The Chime Contract was accepted on January 20, 2020, *see id*. at 16; the Family Place Contract on June 10, 2020, *see id*. at 49; the Workforce Contract on June 30, 2021, *see id*. at 37; the UTSW Contract on June 14, 2022, *see id*. at 56; and the Westmoreland Contract on June 16, 2022, *see id*. at 62.

On November 15, 2022, Level Eleven notified Vision Group that it was terminating Vision Group's "services" effective December 31, 2022, because "we … have decided to go in a different direction due to differences in philosophy and incompatibility." Dkt. No. 41-2 at 17. On November 21, 2022, Level Eleven sent the termination letter by certified mail and email. In the termination letter, Level Eleven terminated all Vision Group services as of December 31, 2022, and stated "[a]s per the service agreement, we are providing you with a minimum 30-day notification. However, we will use the next 45 days to wrap up any loose ends before the termination date." *Id*. at 19.

When Level Eleven terminated the contracts, the Redbird Contract was month-to-month and could be terminated on thirty days written notice. *See* Dkt No.

41-1 at 32.

Vision Group sued Level Eleven for breach of contract, alleging Level Eleven wrongfully terminated the Chime Dallas, Workforce Solutions, Family Place, UTSW, and Westmoreland Contracts.

Vision Group alleged Level Eleven breached the contracts by failing to pay the amounts owed under them; breached the Automatic Renewal Contracts by terminating them before the end of their terms; and breached the Substantial Failure Contracts because no substantial failure existed in Vision Group's performance, Level Eleven failed and/or refused to provide an opportunity for consultation about any alleged substantial failures in Vision Group's performance, and failed and/or refused to provide an opportunity for Vision Group to rectify any alleged substantial failures in performance.

Vision Group also sought a declaratory judgment that the terms of the contracts were four years and that the "at this point" language in the Substantial Failure Contracts meant at the end of the four-year terms, which meant Level Eleven could not terminate them until the terms expired. *See* Dkt. No. 11.

Level Eleven filed a counterclaim for breach of contract *See* Dkt. No. 7 at 13-18. Level Eleven alleged Vision Group materially breached the contracts by failing to perform janitorial cleaning services at Redbird Mall and other related facilities and overbilled Level Eleven.

Vision Group filed a motion for summary judgment, seeking summary judgment on both Level Eleven's counterclaim and Vision Group's own breach of

-4-

contract and declaratory judgment claims but not on Vision Group's request for attorneys' fees. *See* Dkt. No. 39. Level Eleven filed a response, see Dkt. No. 54, and Vision Group filed a reply, see Dkt. No. 55.

Level Eleven also filed a motion for summary judgment. Level Eleven argues that it had a right to terminate the contracts because of Vision Group's material breach of the contracts. *See* Dkt. No. 49. Vision Group filed a response, *see* Dkt. No. 51, and Level Eleven filed a reply, *see* Dkt. No. 58.

Vision Group filed objections to Level Eleven's summary judgment evidence, its motion for summary judgment, and its response to Vision Group's motion for summary judgment. See Dkt. Nos. 53, 57. Vision Group objects that the motion and response are based on a legal theory of prior material breach, which it asserts is an affirmative defense that has been waived because Level Eleven did not raise it in a responsive pleading. The objections to the summary judgment evidence are identical. Vision Group objects to affidavits primarily addressing Vision Group's alleged material breaches of the contracts. Vision Group also objects to a contract between Vision Group and Level Eleven for a Chime facility located in Atlanta, Georgia.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks*

*Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (cleaned up).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (cleaned up)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (cleaned up). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary

judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (cleaned up)).

"[W]hen the moving party has carried its burden under [Federal Rule of Civil Procedure] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer*

-8-

*Expl.*, 767 F.3d at 511 (cleaned up). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (cleaned up). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (cleaned up). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (cleaned up).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*,

465 F.3d 156, 164 (5th Cir. 2006) (cleaned up).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (cleaned up).

## Analysis

I.    Objections

A.    Objections to Level Eleven's Motion for Summary Judgment and Level Eleven's Response to Vision Group's Motion for Summary Judgment

Vision Group objects to Level Eleven's motion and response because both are

based on the legal theory of prior material breach, which it asserts is an affirmative defense that has been waived because Level Eleven did not raise it in its answer.

Federal Rule of Civil Procedure 8(c) requires any matter constituting an avoidance or affirmative defense to be set forth in a defendant's responsive pleadings. *See* FED. R. CIV. P. 8(c)(1). Failure to follow this rule generally results in waiver. *See Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983).

But, where the matter is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal. *See id.* at 855-56; *see also Pasco ex rel. Pasco v. Knoblauch,* 566 F.3d 572, 577 (5th Cir. 2009) ("[U]nder Rule 8(c) we do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, we look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial.").

"[T]he prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008). A defendant does not waive an affirmative defense if (1) the defendant raised the affirmative defense at a pragmatically sufficient time, and (2) the plaintiff was not prejudiced in its ability to respond. *See Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986).

Level Eleven alleges seven material breaches in its counterclaim, which was filed on March 27, 2024. *See* Dkt. No. 7 at 18 ¶ 45. Discovery closed on March 1,

2024. *See* Dkt. No. 22.

In its motion for summary judgment, which was filed on April 2, 2024, Level Eleven argues that it could terminate the contracts before the terms expired because Vision Group had materially breached them. And, in its response to Vision Group's motion for summary judgment, which was filed on April 11, 2024, Level Eleven raises material breach as an affirmative defense.

Vision Group argues that the extent to which Level Eleven raises prior material breach depends on the contracts under review.

Five of the material breaches alleged in Level Eleven's counterclaim are limited to the Redbird Mall contract, and one each concerns the Westmoreland Contract and the UTSW Contract.

In the counterclaim, Level Eleven does not allege any material breaches of the Workforce Solutions, Family Place, and Chime Dallas Contracts. And Level Eleven's principal, Lauren Wilson, was asked about the seven alleged material breaches during her deposition, and she admitted that none of them pertained to the Workforce Solutions, Family Place, and Chime Dallas Contracts. *See* Dkt. No. 41-2 at 93-96, 118-19, 121-22. Level Eleven's asserting material breach of these contracts in its motion for summary judgment and response to Plaintiff's motion for summary judgment, after discovery has closed and within weeks of trial, is insufficient, and Vision Group would be prejudiced in its ability to respond to any material breach allegations as to these contracts. And, so, any affirmative defense of material breach has been waived as to the Workforce Solutions, Family Place, and Chime Dallas

Contracts.

In the counterclaim, Level Eleven alleges that Vision Group "failed to clean the Westmoreland offices." Dkt. No. 7 at 18 ¶ 45, 15 ¶¶ 21, 22. Level Eleven raised the alleged breaches of the Westmoreland Contract at a pragmatically sufficient time, and Vision Group is not prejudiced in its ability to respond. And, so, the affirmative defense has not been waived as to the Westmoreland Contract.

In both its counterclaim and motion for summary judgment, Level Eleven alleges that Vision Group's employees damaged computer monitors in the UTSW facilities. *See id.* at 18 ¶ 45. In the motion for summary judgment, Level Eleven also alleges that a Vision Group employee sexually harassed a UTSW employee, causing the individual severe distress. *See* Dkt. No. 50 at 16-17.

Level Eleven disclosed the alleged material breach concerning the damaged computers in a pragmatically sufficient time, and Vision Group would not be prejudiced in its ability to respond. But the same is not true concerning the allegations of sexual harassment.

The remaining material breaches alleged in the counterclaim concern the Redbird Mall Contract. But Vision Group does not sue on the Redbird Mall Contract. And it is undisputed that the Redbird Mall Contract could be terminated on thirty days' written notice, which was properly given.

Level Eleven also alleges material breaches concerning a contract between the parties to provide janitorial cleaning services to a Chime facility in Atlanta, Georgia. But Vision Group also does not sue on this contract, and Level Eleven fails to show

how the Chime Atlanta Contract is relevant to this case.

The Court sustains Vision Group's objections concerning the material breach doctrine as to the Workforce Solutions, Family Place, Chime Dallas, Chime Atlanta, and Redbird Mall Contracts and as to allegations of material breach of the UTSW Contract based on the sexual harassment complaint.

The Court denies Vision Group's objections concerning material breach as to the Westmoreland Contract and the allegations of material breach of the UTSW Contract based on damaged computer monitors.

And, so, Level Eleven may assert the affirmative defense of material breach as to the Westmoreland Contract; may assert it as to the UTSA Contract for allegations based on broken computer monitors but not for alleged sexual harassment; and may not assert it as to the Workforce Solutions, Family Place, and Chime Dallas Contracts. And the Court will not consider allegations concerning the Redbird Mall contract, because it is undisputed that that contract was properly terminated, and will not consider concerning the Chime Atlanta Contract, because that contract is irrelevant to the claims in this lawsuit.

B.    Objections to Defendant's Summary Judgment Evidence

1.    Affidavit of Omar Hawk

Omar Hawk was the Vice-President of Chime Solutions during the relevant time when Vision Group was subcontracted by Level Eleven to provide commercial cleaning services for Chime's facilities at Redbird Mall in Dallas. Level Eleven offers Hawk's affidavit to detail alleged complaints about the quality of Vision Group's

cleaning services of the Chime Dallas facility.

But, because there were no outstanding issues concerning the Chime Dallas Contract when Level Eleven terminated it, Hawk's affidavit is irrelevant, and the Court will not consider it in determining the motions for summary judgment.

### 2.   Affidavit of Tara Kelly and the Chime Atlanta Contract

Tara Kelly was Director of Human Resources during the relevant time when Vision Group was subcontracted by Level Eleven to provide commercial cleaning services for Chime's facilities at Southlake Mall in Atlanta, Georgia. Level Eleven offers Kelly's affidavit to detail complaints about the quality of Vision Group's cleaning services at the Chime Atlanta facility.

But, as discussed above, the Chime Atlanta Contract is not before the Court. And, so, the Court will not consider either Kelly's affidavit or the Chime Atlanta Contract in determining the motions for summary judgment.

### 3.   Affidavits of Peter Brodsky and Lisa Long

Peter Brodsky is the majority owner and developer of Redbird Mall. Lisa Long is the mall's general manager. They give essentially the same testimony in their affidavits. Level Eleven offers Brodsky's and Long's affidavits to show their dissatisfaction with the quality of Vision Group's cleaning services in general and the deterioration of the relationship between Level Eleven and Vision Group.

Brodsky and Long do not make any specific allegations about the Chime Dallas, Workforce Solutions, Family Place, UTSW, or Westmoreland Contracts. And, so, their affidavits are irrelevant, and the Court will not consider them in

determining the motions for summary judgment.

II.    Motions for Summary Judgment

      Both parties assert claims for breach of contract.

      In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *See Smith Int'l, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir. 2007). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (cleaned up).

      Vision Group asserts that the Chime Dallas, Workforce Solutions, Family Place, Westmoreland, and UTSW Contracts are unambiguous and that Level Eleven breached them by terminating them before the end of the four-year contract terms and that Level Eleven also breached the Westmoreland and UTSW Contracts by failing to comply with conditions precedent before termination.

      Level Eleven argues that it was entitled to terminate all five contracts because Vision Group was in material breach of the contracts.

      When a dispute arises from the terms of a contract and the contract is not ambiguous, the Court can determine the parties' rights and obligations under the agreement as a matter of law. *See ACS Inv'rs, Inc. v. McLaughlin*, 942 S.W.2d 426, 430 (Tex. 1997).

      Whether a contract is ambiguous is a legal question for the court to decide by looking at the contract as a whole in light of the circumstances present when the

contract was entered. *See Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. *See Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

"A contract is ambiguous 'if its plain language is amenable to more than one reasonable interpretation.'" *Trammel Crow Residential Co. v. Am. Protection Ins. Co.*, 574 F. App'x 513, 517 (5th Cir. 2014) (quoting *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009)).

A term is not ambiguous because of a simple lack of clarity. *See DeWitt Cnty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Neither does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018); *DeWitt*, 1 S.W.3d at 100; *see also Spinal Concepts, Inc. v. Curasan*, AG, No. 3:06-cv-448-P, 2006 WL 2577820, at *3 (N.D. Tex. Sept. 7, 2006) ("The mere disagreement of the parties as to the meaning of a contract term will not transform an issue of law into an issue of fact.").

An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. *See DeWitt*, 1 S.W.3d at 100.

If a contract is not ambiguous, then the Court "appl[ies] its plain meaning and enforce[s] it as written." *Id*. But, if a contract is ambiguous, the Court may "consider

extrinsic evidence for 'the purpose of ascertaining the true intentions of the parties expressed in the contract.'" *Trammell Crow* 547 F. App'x at 517 (quoting *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996)).

The Chime Dallas, Workforce Solutions, Family Place, Westmoreland, and UTSW Contracts all state that the lease term is "three (3) years from the date of acceptance and shall automatically renew for an additional one (1) year period on the last anniversary date of this agreement." This language unambiguously states a four-year lease term.

The Automatic Renewal Contracts then state that "[a]t this point either party may cancel with thirty (30) days written notice to the other party."

Vision Group interprets "at this point" to mean that the contracts could be terminated only on thirty days' written notice after the termination of the four-year lease term. Level Eleven interprets it to mean that the contracts could be cancelled at any time after they were executed. *See* Dkt. No. 54 at 16-17.

Giving the words "at this point" their plain, ordinary meaning, Level Eleven's interpretation would render the prior term language meaningless. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (holding that courts should interpret a contract so that no provisions are rendered meaningless).

The Substantial Failure Contracts state that they could be cancelled by either party "in the event of substantial failure" of the other party to fulfill contract obligations.

But there was a condition precedent: before the contracts could be cancelled,

the cancelling party was required to give the other party thirty days' notice of intent to terminate the contract and "an opportunity for consultation with the terminating party followed by reasonable opportunity … to rectify the defects and products or performance, prior to termination." *See C&C Road Constr., Inc. v. SAAB Site Contractors, L.P.*, 574 S.W.3d 576, 588 (Tex. App. – El Paso 2019, no pet.) ("Parties can by clear language include notice and cure provisions as conditions precedent that courts will enforce.").

And, so, the Substantial Failure Contracts could be cancelled before the expiration of the lease term only if the cancelling party complied with the condition precedent to provide the other party with notice and an opportunity to cure.

Level Eleven argues that it was excused from providing notice and an opportunity to cure because it would have been futile. "Texas law does not require the performance of a futile act." *Duncan v. Woodlawn Mfr., Ltd.*, 479 S.W.3d 886, 897 (Tex. App. – El Paso 2015, no pet.). And the futility of curing a defect can defeat strict enforcement of a notice and cure clause. *See id.* at 898.

Level Eleven also alleges that the relationship between Vision Group and Level Eleven had deteriorated so badly by the time that it gave notice of termination that it could not have been rehabilitated in ten days.

But the state of the parties' relationship was not a contract term, and whether the parties got along does not support a factual or legal conclusion that it would have been futile for Level Eleven to give notice and an opportunity to cure.

Lauren Wilson, Level Eleven's principal, acknowledged that the parties did

-19-

not have to like each other to work together. *See* Dkt. No. 45-1 at 6 (112:3-113:4).

The Court finds that Level Eleven was not excused from giving notice and an opportunity to cure the Westmoreland and UTSW Contracts.

Level Eleven terminated the Chime Dallas, Workforce Solutions, Family Place, Westmoreland, and UTSW Contracts before the expiration of their four-year terms. Wilson testified that there were no outstanding issues under the contracts when she sent the termination letter. *See* Dkt. No. 41-2 at 136-37 (86:9-87:4). And the termination letter did not detail Level Eleven's reasons for termination, did not identify any substantial failures, did not identify defects to remedy, and did not provide any opportunity for Plaintiff to cure any alleged defects in performance.

As discussed above, Level Eleven cannot now argue material breach of the Chime Dallas, Workforce Solutions, and Family Place Contracts or of the UTSW Contract based on sexual harassment allegations, because it waived that affirmative defense. Its termination of those contracts before the expiration of the lease term was a breach of contract.

But Level Eleven has not waived the material breach affirmative defense as to the Westmoreland Contract or the UTSW Contract based on allegations of broken computer monitors.

In the counterclaim, Level Eleven alleges that Vision Group "failed to clean the Westmoreland offices." Dkt. No. 7 at 18 ¶ 45. According to Level Eleven, Wilson received two tenant complaints about the quality of Vision Group's cleaning services at the Westmoreland property. On May 15, 2022, Wilson received a complaint that

the hallway was dirty with leaves and other debris. On June 29, 2022, Wilson received a complaint that the trash had not been emptied for a week and that the office desperately needed to be cleaned. *See id.* at 15 ¶¶ 21, 22.

But Level Eleven did not terminate the Westmoreland Contract based on those two complaints, and there were no outstanding issues concerning the Westmoreland Contract when Level Eleven terminated it. There was no material breach of the Westmoreland Contract and Level Eleven breached the contract by terminating it before the end of the four-year term.

In both its counterclaim and motion for summary judgment, Level Eleven alleges that, on December 8, 2022, Vision Group's employees damaged computer monitors in the UTSW facilities. *See id.* at 18 ¶ 45. In the motion for summary judgment, Level Eleven also alleges that, on December 16, 2022, a Vision Group employee sexually harassed a UTSW employee, causing the individual severe distress. *See* Dkt. No. 50 at 16-17.

But both occurred after Level Eleven gave notice of termination, and neither concerned the subject matter of the contract (that is, cleaning). Level Eleven cannot claim that events that occurred after it sent the termination letter are material breaches that would excuse its contractual obligations, including the notice and cure provisions under the UTSW Contract.

And, so, there was no material breach of the UTSW Contract, and Level Eleven breached the contract by terminating it before the end of its four-year term.

Vision Group also alleges that Level Eleven breached the contracts by failing

to pay the outstanding invoices owed under them and that Vision Group suffered damages as a result. Vision Group asserts that Level Eleven failed to pay $135,856 due under the final invoices. It also seeks $775,889 for lost profits for the amounts it would have received for the remainder of the four-year contract terms.

Level Eleven does not dispute those amounts or rebut those arguments. Neither does Level Eleven argue that it suffered damages because of any material breach of the Chime Dallas, Workforce Solutions, Family Place, or Westmoreland Contracts.

Level Eleven's sole damages allegation is that Vision Group overbilled under the UTSW Contract.

Under the "Compensation" section of the UTSW Contract, Vision Group would be paid a flat monthly amount for cleaning services six days per week–Monday through Saturday from 7 a.m. to 7 p.m. and five nights per week from 7 p.m. to 7 a.m. *See* Dkt. No. 41-2 at 53. Under the "Service Schedule" section, Vision Group was required to provide day porter cleaning services from 7 a.m. to 7 p.m. and cleaning services nightly "between the hours of" 7 p.m. and 7 a.m. *See id.* at 54. The contract also included a list of services to be provided, including nightly services. *See id.* at 58.

When Vision Group employees completed their nightly cleaning duties, they left. *See* Dkt. No. 45-4 at 5-8 (217:1-227:7). Level Eleven contends that this resulted in overbilling because the Vision Group employees did not stay the entire twelve-hour period from 7 p.m. to 7 a.m.

-22-

But Vision Group was not being paid by the hour, and Level Eleven's complaints about the UTSW Contract are not based on the quality of cleaning.

Level Eleven fails to show that it suffered any monetary loss. Although it argues that it will be forced to reimburse its clients for the overbilled amounts that were passed on because of Plaintiff's conduct, it has not informed its clients that it owes them money under the principal contracts, and no facility has demanded a reimbursement from Defendant for any alleged overbilling. Level Eleven also fails to state or disclose any amount of damages it claims to be due.

Vision Group has established beyond peradventure the essential elements of its breach of contract and declaratory judgment claims and is entitled to damages in the amount of $891,745. Vision Group is also entitled judgment on Level Eleven's counterclaim and dismissal of the counterclaim with prejudice.

III.    Attorneys' Fees

Vision Group seeks recovery of its reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code § 37.009 and § 38.001(8). *See* Dkt. No. 11 at 18-19.

"Pursuant to Texas law, which applies in this diversity case, [Vision Group] is entitled to recover reasonable and necessary attorneys' fees as the prevailing party on its breach of contract claim." *Wyndham Props. II, Ltd. v. Buca Tex. Restaurants, LP*, No. 4:22-cv-166-BP, 2023 WL 2392090, at *1 (N.D. Tex. Mar. 7, 2023) (citing TEX. CIV. PRAC. & REM. CODE § 38.001(8), and *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("[W]hen a prevailing party in a

breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).")).

But "attorneys' fees under § 37.009 of the Texas Civil Practice and Remedies Code … are unavailable in federal court." *Zavala v. State Farm Mut. Auto. Ins. Co.*, No. SA-23-CV-01372-XR, 2024 WL 51028, at *4 (W.D. Tex. Jan. 3, 2024) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[A] party may not rely on the Texas [Declaratory Judgment Act] to authorize attorney's fees in a diversity case because the statute is not substantive law.")); *accord Barrow v. Onshore Quality Control Specialists, LLC*, No. 1:22-CV-00670-LY, 2022 WL 16849125, at *4 (W.D. Tex. Nov. 10, 2022) (explaining that, "while the Texas DJA authorizes fees in state court, *see* Tex. Civ. Prac. & Rem. Code § 37.009, that provision is inapplicable in diversity cases because it is procedural, not substantive, law" (cleaned up)), *rep. & rec. adopted*, 2022 WL 18585889 (W.D. Tex. Dec. 15, 2022).

Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages" and that, "[u]nless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment." FED. R. CIV. P. 54(d)(2)(A)-(B). Rule 54(d)(2) controls when a prevailing party may move for recovery of its attorneys' fees under Section 38.001(8). *See Hoffman v. L&M Arts*, No. 3:10-cv-953-D, 2013 WL 12284483, at *1 (N.D. Tex. Sept. 5, 2013).

The Court will determine Vision Group's application for attorneys' fees before

entering judgment under Federal Rule of Civil Procedure 58.

## Conclusion

The Court grants Plaintiff's Motion for Summary Judgment [Dkt. No. 39]; denies Defendant's Motion for Summary Judgment [Dkt. No. 49]; grants summary judgment in favor of Plaintiff VIGCE LLC d/b/a Vision Group Cleaning on its breach of contract and declaratory judgment claims and on Defendant Level Eleven LLC's counterclaim for breach of contract; and dismisses with prejudice Defendant Level Eleven LLC's counterclaim for breach of contract.

Plaintiff VIGCE LLC d/b/a Vision Group Cleaning must file an application for attorneys' fees under Texas Civil Practice and Remedies Code § 38.001(8) and Federal Rule of Civil Procedure 54(d)(2) by no later than **Friday, May 17, 2024**. After the application is filed, the Court will set a briefing schedule.

And the Court cancels the May 14, 2024 bench trial setting and the May 7, 2024 final pretrial conference and vacates any unexpired deadlines set by the Court's Amended Order Setting Case for Trial [Dkt. No. 31].

SO ORDERED.

DATED: May 1, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE